UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GRAFTON & UPTON RAILROAD | ) | |
| COMPANY, JON DELLI PRISCOLI and | ) | |
| MICHAEL R. MILANOSKI, as Trustees | ) | |
| of ONE HUNDRED FORTY REALTY TRUST, | ) | |
| | ) | Case No. _____ |
| Plaintiffs | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| TOWN OF HOPEDALE, THE HOPEDALE | ) | |
| SELECT BOARD, by and through its members, | ) | |
| GLENDA HAZARD, BERNARD STOCK, | ) | |
| and BRIAN KEYES and THE HOPEDALE | ) | |
| CONSERVATION COMMISSION by and | ) | |
| through its members, BECCA SOLOMON, | ) | |
| MARCIA MATTHEWS and DAVID | ) | |
| GUGLIELMI | ) | |
| | ) | |
| Defendants | ) | |

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, Grafton & Upton Railroad Company ("GURR"), and its wholly owned nominee

trust, One Hundred Forty Realty Trust[1], bring this action to protect GURR's rights to engage in

interstate commerce, and to enforce its rights, as established by the Interstate Commerce Act, as

amended by the Interstate Commerce Commission Termination Act, 49 U.S.C. §§ 10101 et seq.

("ICA"), to engage in transportation by rail free of unreasonable local interference and

regulation. GURR owns approximately 198.607+- acres of land at 364 West Street in Hopedale

---

[1] One Hundred Forty Realty Trust is a Massachusetts nominee trust and is the record owner of title to the subject real property at issue in this case – 364 West Street, Hopedale, MA.  Grafton & Upton Railroad Company is the 100% beneficial interest holder of the Trust.  As explained by the Supreme Judicial Court of Massachusetts, a nominee trust is "an entity created for the purpose of holding legal title to property with the trustees having only perfunctory duties". *Morrison v. Lennett*, 415 Mass. 857, 860 (1993).  It is the beneficiaries of a nominee trust that truly own the real property.

and is in the process of developing this land to meet its current and future rail transportation needs including common carrier freight service and transloading services as well as for track maintenance and repairs. However, less than four (4) weeks ago, the Hopedale Selectboard met in an illegal Executive Session to discuss, for the first time, the taking of approximately 130 acres of GURR's 198.607acres at 364 West Street by eminent domain. The Selectboard came out of its closed Executive Session on June 21 and announced to the public that it was scheduling a Special Town Meeting in less than three (3) weeks for the sole purpose of voting on one Article – an Article to take by eminent domain approximately 130 acres of railroad owned and controlled land.  The Selectboard voted to open and close the Warrant for the July 11, 2022 Special Town Meeting in less than ten minutes to include the single Article.

On July 11, the Special Town Meeting took place even though the Selectboard had yet to receive an appraisal providing the fair market value of the 130 acres+- that Town Meeting was gathering to vote on.  The Town voted at the Special Town Meeting in favor of a motion to authorize the Selectboard to take 130 acres+- from GURR by eminent domain.  Three days later on July 14, the Selectboard posted notice of a meeting on July 19 to meet to vote to take by eminent domain the 130 acres+-.  Once a favorably vote is taken the Selectboard may immediately record the notice of taking.  Pursuant to G.L. c 79, the recording of the taking will immediately divest and displace GURR from this 130acres+-, which is approximately 65% of the GURR land at 364 West Street adjacent to its rail line and rail line right of way. GURR seeks a declaration that the Town's attempt to take GURR's land by eminent domain is preempted by the ICA and further seeks to preliminarily and permanently enjoin the taking because (1) the taking is preempted by the ICA, and (2) the taking is unlawful under state law, specifically, G.L.c. 160, G.L.c 40 8C, G.L. 45 3 and 45 19.  GURR further seeks a declaration that the Massachusetts

Wetlands Protection Act is preempted by the ICA and to preliminarily and permanently enjoin the Hopedale Conservation Commission from enforcing a July 14, 2022 Enforcement Order alleging non-compliance with the Massachusetts Wetlands Protection Act.

## PARTIES

1.      Plaintiff Grafton & Upton Railroad Company ("GURR") is a railroad corporation organized under the laws of the Commonwealth of Massachusetts and has a principal office 42 Westborough Road, Grafton Massachusetts.

2.      GURR is a Class III rail carrier under the ICA and is subject to the jurisdiction of the federal Surface Transportation Board ("STB").

3.      GURR is the sole beneficiary of the One Hundred Forty Realty Trust (the "Trust"). The Trust is a nominee trust established under a declaration of trust dated September 16, 1981 and recorded in the Worcester Registry of Deeds in Book 7322, Page 177. The Trust has a principal place of business in Grafton, Worcester County, Massachusetts.

4.      Plaintiff Jon Delli Priscoli and Michael R. Milanoski are the Trustees of the Trust.

5.      Defendant Town of Hopedale is a body corporate and politic established under the laws of the Commonwealth of Massachusetts.

6.      Defendant Hopedale Selectboard is a duly constituted board of Hopedale located at 78 Hopedale Street, Hopedale, Worcester County, Massachusetts.

7.      Defendant Glenda Hazard is the current Chair of the Hopedale Selectboard. She is sued in her official capacity.

8.      Defendant Bernard Stock is a member of the Hopedale Selectboard. He is sued in his official capacity.

9.     Defendant Brian Keyes is a member of the Hopedale Board of Selectmen. He is sued in his official capacity.

10.     Defendant Hopedale Conservation Commission is a duly constituted board of Hopedale located at 78 Hopedale Street, Hopedale, Worcester County, Massachusetts.

11.     Defendant Becca Solomon is the current Chair of the Hopedale Conservation Commission. She is sued in her official capacity.

12.     Defendant Marcia Matthews is a member of the Hopedale Conservation Commission. She is sued in her official capacity.

13.     Defendant David Guglielmi is a member of the Hopedale Conservation Commission. He is sued in his official capacity.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, namely, the Supremacy Clause and Commerce Clause of the United States Constitution, the ICA, and 42 U.S.C. § 1983.

15.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1337 because this action arises under an "Act of Congress regulating commerce," namely, the ICA.

16.     Venue is proper in the Central Division pursuant to Local Rule 40.1(d) because all parties reside in the District of Massachusetts and the majority of parties reside in the Central Division.

## FACTS

17.     GURR is a short-line rail carrier incorporated in Massachusetts in 1873 and has been in continuous operation since that time. GURR owns and operates a 16.5-mile rail line that runs between North Grafton, through Upton and Hopedale to Franklin, Massachusetts.  In

addition, GURR leases and operates an 8.4-mile line that is owned by CSX between the terminus

of the GURR owned line in Franklin and Milford, Massachusetts.  A portion of the GURR rail

line bifurcates and runs through property located at 364 West Street in Hopedale.

18.     GURR is part of the national rail system that is critical to Massachusetts'

economy and the efficient movement of goods by rail throughout North America.  GURR's

location is ideal for transloading—the transfer of commodities between rail cars and trucks--of

products that move into and out of the greater Boston area.  For example, the majority of liquid

commodities used to support the Massachusetts economy and pharmaceutical industry are

transloaded by GURR.  GURR fulfills a national and state public purpose by being part of the

flow of goods and materials necessary as a critical backbone of the national supply chain.

19.     In recent years, GURR has invested a substantial amount of capital in order to

upgrade its line and yard facilities in order to serve a substantial demand for transloading

services for commodities that are shipped to Eastern Massachusetts by rail and transloaded into

trucks for final delivery.  GURR has transloading facilities in Upton, Massachusetts, where it

handles a variety of chemicals and other bulk commodities, a facility in North Grafton,

Massachusetts for the delivery by rail of liquid propane and transloading the propane to trucks

for distribution and a facility in Hopedale, Massachusetts where it handles dry bulk materials,

such as building materials.

20.     GURR has experienced significant freight rail growth in recent years.  In 2010,

GURR handled approximately 200 rail carloads, but by 2020 the number of cars was

approximately 3000.  GURR anticipates that its trans-load and other rail businesses will continue

to grow year after year.  For example, the recently acquired line between Milford and Franklin is

expected to generate approximately 400 carloads per year, and a new chemical transloading facility at Upton will produce additional business.

21.     GURR anticipates continued steady growth in its business, and this projection is consistent with the expectations and estimates of Massachusetts.  A 2018 State Rail Plan produced by the Massachusetts Department of Transportation projected that by 2040 the rail system in Massachusetts will need to accommodate approximately 19 million more tons of originating freight per year, 25 million more tons of terminating freight and 34 million more tons of rail freight traffic moving within Massachusetts.  The plan recognizes that a well utilized rail network has many benefits for the state and its residents, including the reduction of greenhouse gases, less motor vehicle congestion, reduced wear and tear on the highways, travel time savings and economic development.

22.     The additional existing traffic and the anticipated future growth of traffic on the line have created a need for additional yard and track space in order to support and handle efficiently such rail traffic.  In addition to the development of new facilities for the core GURR business of transferring commodities from railcars to trucks, there is a growing need for track space to temporarily store rail cars, switch cars moving to and from the trans-loading facilities, and to perform other routine rail transportation activities, such as maintaining locomotives, railcars and maintenance of way equipment.

23.     Part of the increase in business will be met by the expansion and upgrading of the track and facilities at the small GURR yard in Hopedale.  GURR has recently constructed additional yard tracks at its Hopedale yard and has reconfigured other tracks in order to accommodate new business.  In addition, GURR is in the process of upgrading its main north-south line at the northern end of the Hopedale yard.  Even with the expansion and improvement

6

projects already undertaken, it is clear that additional yard and transloading facilities will be required in order to meet current anticipated future levels of business.

24.     Prior to 2010 GURR identified two parcels of Industrial zoned real estate in Hopedale, just north of the existing yard, to expand its rail transportation facilities to meet the current needs of customers and to meet the expected increase in business.  In 2018 GURR commissioned independent appraisals for both properties.  The parcels were located at 364 West Street, a 155-acre parcel, and 1 Carpenter Road, a land-locked 18-acre+- parcel that is adjacent to the 364 West Street parcel.

25.     364 West Street was owned by the Trust and 130 acres+- of the 155 acre +- 364 West Street tract of land was classified as forestland under Massachusetts G.L. c. 61 by the Trust and was under a forest management plan approved by the Commonwealth of Massachusetts Department of Conservation and Recreation.  The forestland classification of the 130 acres+- was scheduled to expire in the Fall of 2022.

26.     Upon information and belief, the real property located at 364 West Street (and Carpenter Road) has been zoned for industrial uses since Hopedale adopted zoning in or around 1973.

27.     On October 12, 2020, GURR purchased the beneficial interest of the Trust. As a result of this purchase, GURR became the owner of the 155-acre parcel at 364 West Street, including the 130 acres+- of what was then, forestland.

28.     GURR acquired 364 West Street to further its rail transportation operations to meet the needs of current customers and expected future growth of its transloading and common carrier rail transportation business.

29.     GURR also acquired additional parcels adjacent to 364 West Street, including 1 Carpenter Road in 2019 (18 acres+-) and 2 additional parcels in 2021 (23 acres+-).  The total acreage of 364 West Street as a result of these acquisitions is currently 198.607 acres (including the rail line and its right of way) and is reflected on a June 2021 Plan of Land recorded at the Worcester District Registry of Deeds at Plan Book 957, Plan 48.  A true and accurate copy of this Plan of Land is attached hereto as Exhibit 1.

30.     The entire 198.607acres at 364 West Street is owned and controlled by GURR and all of the track and other facilities constructed at the property will be likewise owned and controlled by GURR and used for transloading and other rail transportation purposes.

31.     As set forth in the attached preliminary plan of GURR's Metrowest Transloading and Logistics Center (Exhibit 2) , GURR's rail transportation development plans at 364 West Street include:

- All roadways in the property to access the rail facilities

- All the new track development in the property will provide access directly or indirectly to the buildings and other facilities;

- All the stormwater detention areas to support the facility

- Well location and buffer zone as well as water storage tank on top the property for fire suppression and water pressure for site.

- Sewer treatment plant area and buffer zone

- Stormwater basins for the full development of the infrastructure.

- More than 1,500,000SF of space for transloading and temporary storage broken down into the following categories:

  o  Railroad Transloading and Temporary Storage Building (on rail spur)

- o Railroad Temporary Storage Building (off rail spur but near outside rail laydown area)

- o Railroad trucking terminal located next to silos that are piped from rail siding to be transloaded into trucks.

- o Railroad support buildings for rail related contractors that work on GURR rail equipment and infrastructure including specialized trades like Positive Train Control installation. **https://railroads.dot.gov/train-control/ptc/positive-train-control-ptc**).

- o Areas for temporary railcar storage, switching, building trains, and railcar repair

32.    Upon information and belief, the Massachusetts Freight Rail Association is working with the State Legislature and the Governor's Office to create regional public/private partnerships for rail logistic hubs to maximize freight hauling efficiency while decreasing carbon emissions and road usage that 364 West Street is uniquely designed for.

33.    GURR's anticipated transloading and logistics center is under construction and agreements are being finalized to service current and new customers that are in need of transloading of products.  In spite of past delays, GURR expects to be able to open its new facility at 364 West Street by next Spring or Summer (2023), which will have a positive impact on national supply chain issues that have been adversely affecting the local, state and national economy over the past few years.

34.    In sum, GURR has been working for an extended period to acquire and develop the property to support rail transportation that will include on the entirety of the site transloading, temporary storage, services related to transloading or temporary storage, and whatever additional

rail activities are necessary or required in order to support the rail business that currently exists and is anticipated in the future, such as repairs to rail related equipment and the construction and operation of switching tracks, storage tracks, yard tracks to relieve congestion and facilitate service.

35.     In addition, given that no public water or sewer service currently exists on the 364 West Street site, GURR will need to use the entire parcel in order to accommodate the well protection zone, the wastewater treatment plant recharge area, ample land to protect and build stormwater run-off protection, and a noise buffer zone for abutting residential property.

36.     The assembled acreage and expected development at 364 West Street will permit GURR to provide rail transportation facilities and services in order to meet current customer demand and expected future growth.  In addition to serving the public interest by providing efficient rail transportation, the implementation of the plans for the property are anticipated to further promote the public interest by bringing hundreds of new jobs and millions of dollars in tax revenue to Hopedale.

Prior Litigation – 364 West Street

37.     In November 2020, the Town, through its then Selectboard, filed an Amended Verified Complaint against GURR and the Trust in Massachusetts Land Court claiming that the Town had a ripened and enforceable right of first refusal option to purchase 130 acres of land at 364 West Street pursuant to G.L. c 61 as a result of GURR's acquisition of the beneficial interest in the Trust. See Town of Hopedale vs. Grafton & Upton Railroad Company, et al, 20 MISC 00467 ("the Land Court Action").  The Town further alleged that a Special Town Meeting held in October 2020 voted to authorize the Selectboard to exercise the G.L. c. 61 right of first refusal and also voted to appropriate $1,175,000 to acquire the 130 acres at 364 West Street.

38.     In the Land Court Action, GURR and the Trust denied that the Town had an enforceable right of first refusal option to acquire the 130 acres. GURR also filed a Petition before the STB asserting that the Town's Land Court claims were preempted by the ICA, specifically, 49 U.S.C. §10501(b).

39.     The Town moved in the Land Court Action for a preliminary injunction against GURR and the Trust, which the Land Court (Rubin, J.) denied after specifically noting that it did "not appear that the Town's right of first refusal ripened into an option on July 9, 2020" and that as a result she could not "determine whether the [ICA] preempts the Town's right to purchase land which the Defendants contend is land intended for use as transportation by rail." The Land Court then ordered the parties to mediation screening.

40.     The Town, GURR and the Trust voluntarily agreed to mediate their dispute and after two days of mediation in January 2021 with retired Land Court Judge Leon Lombardi, the parties reached a Settlement Agreement.

41.     In the Settlement Agreement the Town compromised its disputed c. 61 claim to acquire 130+ acres of land at 364 West Street, in exchange for an undisputed right to acquire 40+- acres of that 130-acres+- plus an additional 44+- acres of non-forestland. GURR and the Trust promised to transfer 64+- acres to the Town in consideration of a payment of $587,500. The Trust also promised to donate 20 acres+- of non-forestland across the street at 363 West Street to the Town.

42.     The Town later acknowledged that it decided to settle the Land Court Action because it "understood the [Land] Court to be expressing that mediation was advisable as the Town's claims to the 155 acres may not be successful," and because Judge Lombardi "also

11

expressed doubts as to the Town's likelihood of success against the Railroad and encouraged a settlement."

43.     On February 10, 2021, the parties filed a Stipulation of Dismissal With Prejudice in the Land Court Action. A Stipulation of Dismissal with Prejudice represents an adjudication on the merits of the claims brought in the Land Court Action.

44.     On or around February 16, 2021 GURR moved to dismiss its STB Petition, which was allowed.

45.     In March 2021, ten taxpayers of Hopedale filed a Verified Complaint in Massachusetts Superior Court "bringing three counts: (1) to enjoin the Board from making expenditures and entering obligations under the [Land Court] Settlement Agreement; (2) to obtain a declaratory judgment that the Town's c. 61 rights remain fully enforceable and enforce the same through transfer of title to the Forestland to the Town; (3) a declaratory order that the Forestland is protected under Article 97 and to protect against any change from Article 97 use." See, Reilly et al v. Grafton & Upton Railroad Company, et al, 2185CV00238D (the "Superior Court Action').

46.     GURR and the Trust moved for Judgment on the Pleadings on the only Count asserted against them in the Superior Court Action: Count II. The ten taxpayers and the Town cross-moved for Judgment on the Pleadings on all claims: Counts I, II and III.

47.     The Town asserted in its cross-motion that the decision to exercise or not exercise a G.L.c. 61 right of first refusal is "an executive action whose sole authority resides with the Board of Selectmen...There is nothing Town Meeting or anyone else can do to exercise the right of first refusal in such a case."

48.     On November 10, 2021, the Superior Court (Goodwin, J.) entered Judgment in favor of the ten taxpayers on Count I, in favor of GURR, the Trust and the Town on Count II and in favor of the Town on Count III.

49.     As a result of the Judgment that entered under Count I in the Superior Court Action, the Town was enjoined from using funds appropriated at the October 2020 Special Town Meeting (STM) to purchase the 64 acres+- described in the Land Court Settlement Agreement.

50.     In December 2021, the Town moved in the Land Court Action pursuant to Mass. R. Civ. P. 60(b)(6) to Vacate the Judgment that entered through the February 2021 Stipulation of Dismissal with Prejudice filed by the parties.

51.     In January 2022, the Land Court (Rubin, J.) denied the Town's Motion to Vacate the February 2021 Judgment.

52.     In February 2022, the Town appealed the Land Court's denial of its Rule 60(b)(6) motion and moved for an injunction pending its appeal.

53.     In April 2022, a Single Justice of the Appeals Court (Desmond, J.), after full briefing, denied the Town's Motion for Injunction pending appeal, finding that the Town was not likely to succeed on the merits. See, <u>Town of Hopedale v. Grafton & Upton Railroad Company et al</u>, 2022-J-0146. Justice Desmond wrote in part that "the select board was authorized to settle the matter and did so. That the town was unwilling to correctly appropriate the funds to fully recognize the benefit of that agreement does not entitle the town to relief from judgment."

54.     In May 2022, in light of the April 2022 Single Justice Decision, the Town moved to voluntarily dismiss its appeal, and its motion was allowed by the Land Court.

<u>New Selectboard – New Imminent Eminent Domain Threat</u>

13

55.     In May 2022, defendant Bernard Stock joined the Selectboard. Selectman Stock and Chairwoman Hazard compromise a majority of the Board which is openly hostile to GURR.

56.     During his first Board meeting, Selectman Stock stated he had "never seen this [Land Court Settlement] agreement" between the Town and plaintiffs. Despite admitting he had never read it, and did not know what was in it, Selectman Stock asked "Can I invalidate this agreement? Can I open it up?"

57.     Upon information and belief, the new Selectboard has been exploring ways to acquire the 130 acres of real property in spite of the February 2021 Stipulation of Dismissal With Prejudice that entered in the Land Court Action, which represented an adjudication on the merits of the Town's claims to this land.

58.     The Town also released any claim of ownership to these130 acres+- in the Land Court Settlement Agreement including claims of eminent domain.

59.     On June 16, 2022, the new Selectboard posted the Agenda for its June 21, 2022 meeting. The posted Agenda included an Executive Session to discuss, inter alia, "the acquisition of real property…"  A true and accurate copy of the June 21 Agenda is attached hereto as Exhibit 3.  The Agenda did not identify the real property that it intended to discuss taking in its Executive Session.  The Selectboard asserted that Executive Session was appropriate because having a discussion in open session to consider taking real property by eminent domain "may have a detrimental effect on the negotiating position of the public body."

60.     Upon information and belief, the new Selectboard intended to discuss the taking of 130 acres+- of 364 West Street from GURR in its June 21 Executive Session but did not want the public, including GURR, to listen to its discussions on its intentions to try and take this real property from GURR.

61.     The Selectboard violated the Massachusetts Open Meeting Law on June 21, 2022 when it met in Executive Session to discuss taking 130 acres+- of private real property from GURR and the Trust.

62.     Upon returning to open session after the conclusion of its unlawful June 21, 2022 Executive Session, the new Selectboard voted to pursue an eminent domain taking of 130 acres+- of the 198 acres +- of real property owned and controlled by GURR at 364 West Street.

63.     At its June 21 meeting, the new Selectboard scheduled a Special Town Meeting for July 11, 2022, less than three weeks from June 21 to vote on a motion to authorize the Selectboard to take GURR's real property by eminent domain.

64.     At its June 21 meeting, the new Selectboard opened and closed the Warrant for the July 11 Special Town Meeting in less than 10 minutes and included only one Article on the Warrant – an Article to authorize the Selectboard to take by eminent domain 130 acres of real property at 364 West Street from GURR.

65.     The Article included on the July 11, 2022 Warrant is as follows:

**ARTICLE 1**: To see if the Town will vote to acquire, by purchase, eminent domain, or otherwise, certain property, containing up to 130.18 acres, more or less, located at 364 West Street, being a portion of that land described in an instrument of redemption of tax title taking recorded with the Worcester South District Registry of Deeds in Book 61533, Page 78, and shown on a sketch plan on file with the Town Clerk (the "Property"), and in order to fund said acquisition, raise and appropriate, transfer from available funds, or borrow pursuant to G.L. c. 44, §7, or any other enabling authority, a sum of money therefor, and to apply any discretionary grants, gifts, awards, or donations of money given to the Town for the purpose of land conservation, such acquisition to be made to maintain and preserve said property and the forest, water, air, and other natural resources thereon for the use of the public for conservation and recreation purposes to be managed under the control of the Hopedale Parks Commission, provided that such authorization shall not be construed as (1) ratifying the terms of the Settlement Agreement between the Town and the Grafton & Upton Railroad (the "Railroad") dated February 8, 2021; or (2) authorizing the Selectboard to acquire fee title to any portions of the Property that are currently in use by the Railroad for railroad operations purposes or transloading facilities; and further to authorize the Selectboard to take any and all actions and execute any and

all documents to carry out the purposes of this article; or to take any other action in relation thereto.

A true and accurate copy of the July 11Town Warrant is attached hereto as Exhibit 4.

66.     Upon information and belief, the "sketch plan on file" with the Hopedale Town Clerk referred to in Article 1 was the June 2021 Plan of Land attached hereto as Exhibit 1, which shows 198.607acres+-.  See also, Exhibit 5 attached hereto.

67.     Upon information and belief, "the sketch plan on file" with the Hopedale Town Clerk did not delineate the 130 acres+- purportedly subject to Article 1 from the remainder of the acreage shown on the "sketch plan on file."

68.     Further, the Selectboard was not provided with an appraisal of the 130 acres+- being targeted for taking by eminent domain on or before July 11, 2022.

69.     Even though it was not provided with an appraisal setting forth a fair market value for the 130 acres on or before July 11, the Selectboard did not postpone the July 11 Special Town Meeting.

70.     On July 11, 2022, the Special Town Meeting voted to authorize the Selectboard to take 130 acres+- at 364 West Street from GURR by eminent domain.

71.     Less than three days later, at approximately 1:50 pm on July 14 2022, the Selectboard posted notice of a meeting for Tuesday, July 19, 2022 at 5pm.

72.     The July 19 meeting includes an agenda item to "[c]onsider and Vote on Proposed Order of Taking for Land at 364 West Street Pursuant to Article I of the July 11, 2022 Special Town Meeting."  A true and accurate copy of the July 19 Agenda is attached hereto as Exhibit 6.

73.     Based on the prior public statements of Chairwoman Hazard and Selectman Stock, there is a majority of the Selectboard that unambiguously intends to vote favorably on the taking of 130 acres+- of real property owned and controlled by GURR at 364 West Street.

16

74.     Because it purports to take the property pursuant to Chapter 79 of the Massachusetts General Laws, the Selectboard must record a notice of taking within 30 days of voting to adopt it.

75.     At a July 11, 2022 Selectboard meeting, Special Town Counsel stated that the Selectboard could record a notice of taking immediately after voting to take the land.

76.     Upon information and belief, the Selectboard intends to record a notice of taking 130 acres+_- of GURR's property at 364 West Street immediately after it votes to take GURR's property on Tuesday, July 19.

77.     Under G.L. c. 79, the recording of the notice of taking immediately vests title to the property in the municipality.

78.     If the Town takes GURR's property by eminent domain, GURR will immediately lose all right, title and interest in approximately 130 acres of industrially zoned real estate uniquely situated on an operating railroad right of way. A taking also would render GURR's remaining property landlocked and undevelopable. A taking would suspend GURR's ongoing rail transportation development indefinitely, and would cause GURR to lose incalculable revenues, customer relationships, and financing.

79.     364 West Street is a unique large assemblage of several parcels of undeveloped, industrially zoned land bisected by an operating railroad right of way.  As such, the property provides the opportunity for an integral hub in the supply chain for propane, lumber, sand, stone and gravel, metals, chemicals and other commodities. The size of the assemblage provides the opportunity for transloading operations in which GURR would unload products from railcars for distribution by truck to destinations in the Boston area, thereby supplementing and making more efficient GURR's current transloading business and anticipated future business.

80.     A taking by the Town would divest from GURR irreplaceable real estate and with it, a once in a lifetime railroad development opportunity. GURR could not simply take the proceeds from a taking and purchase replacement property similarly sized, zoned, situated, and suited to development as a railroad transloading operation.

81.     The planned taking also would impair GURR's rail activities beyond the subject property. GURR would continue to own contiguous parcels, which post-taking would have no frontage on an existing public way, no access to GURR's rail right of way, and no access to any well water. Thus, even the land remaining to GURR after the proposed taking would be incapable of development for the planned railroad use.

## COUNT I
### Declaratory Relief Pursuant to 28 U.S.C. § 2201
### (ICA Preemption 49 U.S.C. § 10101 et seq)

82.     Plaintiffs incorporate paragraphs 1 through 81 as if expressly set forth herein.

83.     An actual controversy exists between the parties because the Town Meeting has voted to authorize the Selectboard to take plaintiffs' property, and the Selectboard is expected to vote on July 19, 2022 to take 130 acres of land at 364 West Street from GURR and to promptly record a notice of taking at the Worcester District Registry of Deeds.

84.     The property subject to the Town's purported eminent domain taking is owned and controlled by GURR.

85.     GURR asserts that the anticipated taking by eminent domain of 130 acres of land at 364 West Street is preempted by the ICA, which the Town apparently disputes.

86.     The ICA was amended by the United States Congress in 1995 through the Interstate Commerce Commission Termination Act ("ICCTA") for the purpose of deregulating and fostering competition among railroads. *See* 49 U.S.C. § 10101. The ICA, as amended by the

ICCTA, established the STB a federal agency having jurisdiction over rail carriers and rail transportation.

87.     The jurisdictional section of the ICA established the STB's jurisdiction as exclusive and includes an express preemption provision:

The jurisdiction of the Board over—

(1) transportation by rail carriers, and the remedies provided in this part [49 USCS §§ 10101 et seq.] with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and

(2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,
is exclusive. Except as otherwise provided in this part, the remedies provided under this with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law. [emphasis supplied]

88.     Under the Section 10102(9) of the ICA, the term "transportation" includes "property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use."

89.     The STB's jurisdiction over transportation is exclusive, whether or not it exercises its regulatory authority.

90.     GURR is a rail carrier as defined by the ICA.

91.     A portion of GURR's rail line bifurcates and runs through a portion of the 130 acres+- at 364 West Street that the Selectboard intends to vote to take by eminent domain.

92.     GURR acquired the 198.607acres+- of real property at 364 West Street to maintain its current rail transportation business and to prepare for likely future growth of its rail transportation operations.

93.     GURR's current and intended rail transportation uses include: sidetrack construction, track maintenance, rail car maintenance and storage, rail freight transloading, and bridge maintenance and construction, among other rail transportation uses.

94.     The purpose and effect of the Town's intended taking is to eliminate GURR's ability to conduct rail transportation activities at 364 West Street and to prevent GURR from maintaining and expanding its current rail transportation activities to meet customer demand at this location.

95.     The intended eminent domain taking is an unreasonable interference by the Town with GURR's rail transportation activities.

96.     The ICA preempts the Town's intended taking of any and all real property at 364 West Street.

97.     The intended eminent domain taking of 130 acres+- of real property at 364 West Street violates the ICA.

98.     GURR asserts federal preemption as an affirmative cause of action to enjoin the Town of Hopedale and its Selectboard from interfering with its federal rights.

**COUNT II**
**42 U.S.C. § 1983**
**(Interference with Federal Right to Participate in Interstate Commerce)**

99.     Plaintiffs incorporate paragraphs 1 through 98 as if expressly set forth herein.

100.     As a part of the interstate rail system, GURR enjoys a federal right to participate in interstate commerce by rail transportation.

101.     Pursuant to the Supremacy Clause and the Commerce Clause of the United States Constitution, and to the ICA, GURR enjoys a federal constitutional and statutory right to engage in rail transportation free from unreasonable interference by local regulation.

102.     The Town's planned taking would unreasonably interfere with GURR's participation in interstate commerce by rail transportation.

103.     The Town, through its Selectboard and its members, acted under color of state law, namely, Chapter 79 of the Massachusetts General Laws, to prepare the imminent taking of plaintiffs' property.

104.     The Town, through its Selectboard and its members, is engaging in an ongoing attempt to interfere with and deprive GURR of its right to participate in interstate commerce by rail transportation.

**COUNT III**
**Declaratory Relief Pursuant to 28 U.S.C. § 2201**
**(Violation of G.L. c. 160, § 7)**

105.     Plaintiffs incorporate paragraphs 1 through 104 as if expressly set forth herein.

106.     Massachusetts law, specifically Section 7 of Chapter 160 of the Massachusetts General Laws, authorizes only the Commonwealth to take a railroad corporation's property by eminent domain.

107.     Municipalities, including the Town of Hopedale are not authorized to take real property from a railroad corporation by eminent domain.

108.     The imminent taking is unlawful and contrary to G.L.c.160.

**COUNT IV**
**Declaratory Relief Pursuant to 28 U.S.C. § 2201**
**(Violation of G.L. c. 40, §§ 8C, 14; G.L. c. 45, §§ 3, 19)**

109.     Plaintiffs incorporate paragraphs 1 through 108 as if expressly set forth herein.

110.     The Article on the July 11 Warrant specifically states that the Town intends to take 130 acres of land at 364 West Street "for the purpose of land conservation… to maintain

and preserve said property and the forest, water, air and other natural resources thereon for the use of the public for conservation and recreation purposes…"

111.    Likewise, the amended motion to move that Article stated that the Town authorize the Select Board to acquire 364 West Street by eminent domain "for the purpose of land conservation, such acquisition to be made to maintain and preserve said property and the forest, water, air, and other natural resources thereon for the use of the public and conservation and recreation purposes…"

112.    Eminent domain takings for these purposes are governed either by G.L.c 40 §8C (conservation purposes), G.L.c 45 §3 (public parks) or G.L.c 45 §19 (culture of forest trees or for the preservation of water supply) and not G.L.c. 40 §14 which only applies to takings "… not otherwise authorized or directed by statute."

113.    G. L. c. 40, § 8C states in part:

For the purposes of this section a city or town may, upon the written request of the commission, take by eminent domain under chapter seventy-nine, the fee or any lesser interest in any land or waters located in such city or town, provided such taking has first been approved by a two-thirds vote of the city council or a two-thirds vote of an annual or special town meeting, which land and waters shall thereupon be under the jurisdiction and control of the commission.

114.    Because the Town intends to take 130 acres at 364 West Street by eminent domain for conservation purposes, it is required take the property in accordance with G.L.c 40 §8C and not G.Lc. 40 §14.

115.    The Town, through its Selectboard is not permitted to take real property by eminent domain for conservation purposes without a written request made by the Hopedale Conservation Commission.

116.     Upon information and belief, the Conservation Commission has not voted to request that the Town take 130 acres at 364 West Street by eminent domain and has not submitted such a written request to take the 364 West Street property.

117.     The Town has also not complied with G.L.c. 45 §3 since the STM vote authorized the Selectboard and not the Board of Park Commissioners to make the taking.  Finally, 45 §19 has not been complied with since a taking under authority of that statute can only be made at an annual Town Meeting – and not at a Special Town Meeting.

**COUNT V**
**Declaratory Relief Pursuant to 28 U.S.C. § 2201**
**Prior Public Use Doctrine**

118.     Plaintiffs incorporate paragraphs 1 through 117 as if expressly set forth herein Massachusetts common law recognizes the prior public use doctrine, which protects property put to the public use by prohibiting its taking by eminent domain for any other public purpose.

119.     Massachusetts common law recognizes railroad property as property put to a public use for purposes of the prior public use doctrine.

120.     GURR's operation of a rail line at 364 West Street serves a public purpose.

121.     The Town of Hopedale cannot take railroad property by eminent domain for use for other public purposes.

122.     The imminent taking is unauthorized under state law.

**COUNT VI**
**Declaratory Relief Pursuant to 28 U.S.C. § 2201**
**(ICA Preemption 49 U.S.C. § 10101 et seq – Hopedale Conservation Commission)**

123.     Plaintiffs incorporate paragraphs 1 through 122 as if expressly set forth herein.

124.     GURR's site development work related to the development and construction of GURR's rail transportation and transloading facility at 364 West Street is subject to federal

regulation and oversight by the United States Environmental Protection Agency and the United

States Army Corp. of Engineers.  An example of this oversight is provided by the May 26, 2022

Inspection performed by the EPA, reflected in the Inspection Report attached hereto as Exhibit 3.

125.    However, in an apparent effort to open a new line of attack on GURR in

coordination with the Hopedale Selectboard, on July 14, 2022, the Hopedale Conservation

Commission emailed GURR's President with a Notice of Enforcement Order with respect to the

real property located at 364 West Street.  A true and accurate copy of the July 14, 2022

Enforcement Order is attached hereto as Exhibit 4.

126.    The Enforcement Order asserts that GURR and the record owner of title to 364

West Street, the Trust, are in violation of the Massachusetts Wetlands Protection Act as a result

of site work being performed at the property to construct and develop GURR's rail transportation

and transloading facility.

127.    The Enforcement Order purports to order GURR to cease and desist from

continuing to perform work related to the construction and development of GURR's rail

transportation and transloading facility at 364 West Street.

128.    The Enforcement Order issued by the Hopedale Conservation Commission is

preempted by the ICA.

129.    The Massachusetts Wetlands Protection Act as it relates to the development and

construction of GURR's rail transportation and transloading facility at 364 West Street is

preempted by the ICA, but remains subject to federal environmental statutes and regulations.

130.    The Enforcement Order issued by the Hopedale Conservation Commission

violates the ICA.

24

131.     There is an actual controversy between GURR and the Hopedale Conservation Commission with respect to the applicability of the Massachusetts Wetlands Protection Act as it relates to the construction and development of GURR's rail transportation and transloading facility at 364 West Street.

132.     The ICA established the STB a federal agency having jurisdiction over rail carriers and rail transportation.

133.     The jurisdictional section of the ICA established the STB's jurisdiction as exclusive and includes an express preemption provision:

The jurisdiction of the Board over—

(1) transportation by rail carriers, and the remedies provided in this part [49 USCS §§ 10101 et seq.] with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and

(2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,
is exclusive. Except as otherwise provided in this part, the remedies provided under this with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law. [emphasis supplied]

134.     Under the Section 10102(9) of the ICA, the term "transportation" includes "property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use."

135.     The STB's jurisdiction over transportation is exclusive, whether or not it exercises its regulatory authority.

136.     GURR is a rail carrier as defined by the ICA.

137.    GURR's current and intended rail transportation uses include: sidetrack construction, track maintenance, rail car maintenance and storage, rail freight transloading, and bridge maintenance and construction, among other rail transportation uses.

138.    The purpose and effect of the Enforcement Order and applicability of the Massachusetts Wetlands Protection Act represents a clear and unreasonable interference by the Hopedale Conservation Commission with GURR's rail transportation activities at 364 West Street.

139.    GURR asserts federal preemption as an affirmative cause of action to enjoin the Town of Hopedale and its Selectboard from interfering with its federal rights.

## PRAYERS FOR RELIEF

WHEREFORE, the plaintiffs, Grafton & Upton Railroad Company and Jon Delli Priscoli and Michael Milanoski, Trustees of the One Hundred Forty Realty Trust, pray that this Court:

1.  Issue a Temporary Restraining Order enjoining the Town of Hopedale, its Selectboard, or any of their employees, agents, or attorneys from taking by eminent domain any real property located at 364 West Street, Hopedale, MA, including, but not limited to the 130.18 acres referenced in Article I of the July 11, 2022 Special Town Meeting Warrant;

2.  Issue a preliminary injunction enjoining the Town of Hopedale, its Selectboard, or any of their employees, agents or attorneys from taking by eminent domain any real property located at 364 West Street, Hopedale, MA, including, but not limited to the 130.18 acres referenced in Article I of the July 11, 2022 Special Town Meeting Warrant;

3.  Enter Judgment declaring that the application of G.L. c. 40 and G.L. c. 79 to take any portion of 364 West Street by eminent domain is categorically preempted by the

Interstate Commerce Act and also represents an unreasonable interference with rail transportation;

4.  Enter Judgment declaring that the eminent domain taking authorized by the July 11, 2022 Hopedale Town Meeting and imminently scheduled to be adopted and recorded by the Town's Selectboard constitutes an unreasonable interference with plaintiffs' federal right to participate in interstate commerce by rail;

5.  Enter Judgment declaring that the eminent domain taking authorized by the July 11, 2022 Hopedale Town Meeting and imminently scheduled to be adopted and recorded by the Town's Selectboard is beyond the Town of Hopedale's authority under Massachusetts law, specifically G.L. c. 160, § 7 which authorizes only the Commonwealth to take railroad property by eminent domain;

6.  Enter Judgment declaring that the eminent domain taking authorized by the July 11, 2022 Hopedale Town Meeting and imminently scheduled to be adopted and recorded by the Town's Selectboard is beyond the Town of Hopedale's authority under Massachusetts law, specifically M.G.L. c. 40 §8C, G.L. c 45 §3, G.L. c 45 §19 and G.L. c 40 §14;

7.  Enter Judgment declaring that the eminent domain taking authorized by the July 11, 2022 Hopedale Town Meeting and imminently scheduled to be adopted and recorded by the Town's Selectboard is beyond the Town of Hopedale's authority under Massachusetts common law, specifically the prior public use doctrine;

8.  Issue a permanent injunction enjoining the Town of Hopedale, its Selectboard, or any of their employees, agents or attorneys from taking by eminent domain any real property located at 364 West Street, Hopedale, MA, including, but not limited to the 130.18 acres referenced in Article I of the July 11, 2022 Special Town Meeting Warrant;

9. Issue a Temporary Restraining Order enjoining the Town of Hopedale, its Conservation Commission, or any of their employees, agents, or attorneys from seeking to enforce the July 14, 2022 Enforcement Order regarding work being performed at 364 West Street, Hopedale, MA;

10. Issue a preliminary injunction enjoining the Town of Hopedale, its Conservation Commission, or any of their employees, agents, or attorneys from seeking to enforce the July 14, 2022 Enforcement Order regarding work being performed at 364 West Street, Hopedale, MA;

11. Enter Judgment declaring that the application of the Massachusetts Wetlands Protection Act G.L. c. 131 §40 et seq. is preempted by the Interstate Commerce Act as an unreasonable interference with rail transportation;

12. Enter Judgment declaring that the July 14, 2022 Enforcement Order is preempted by the Interstate Commerce Act as an unreasonable interference with rail transportation;

13. Award the plaintiffs their damages in an amount to be determined at trial;

14. Award the plaintiffs their reasonable attorney's fees; and Grant such other relief as this Court deems just and proper.

GRAFTON & UPTON RAILROAD COMPANY,
JON DELLI PRISCOLI, AND
AND MICHAEL MILANOSKI, as Trustees of the
ONE HUNDRED FORTY REALTY TRUST,

*/s/ Andrew P. DiCenzo*
Donald C. Keavany, Jr., BBO# 631216
Andrew P. DiCenzo, BBO# 689291
Christopher Hays, Wojcik & Mavricos, LLP
370 Main Street, Suite 970
Worcester, MA 01608
Tel. 508-792-2800
Fax 508-792-6224
dkeavany@chwmlaw.com
adicenzo@chwmlaw.com

## **VERIFICATION**

I have read the factual allegations of this Verified Complaint and I hereby state that the factual allegations are true and accurate and where stated to be made on information and belief are true to the best of my knowledge.

Signed Under the penalties of perjury this 16th day of July, 2022.

_____
Michael Milanoski
President, Grafton & Upton Railroad Company
Trustee, One Hundred Forty Realty Trust